Electronically Filed
Supreme Court
SCAP-10-0000131
27-FEB-2015
08:23 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

GORDON ITO, Insurance Commissioner of the State of Hawaiʻi,
Petitioner-Appellee,

vs.

INVESTORS EQUITY LIFE HOLDING COMPANY,
a Delaware Corporation, Appellant,

and

HAWAII LIFE AND DISABILITY INSURANCE GUARANTY ASSOCIATION,
Appellee,

and

INVESTORS EQUITY LIFE INSURANCE COMPANY OF HAWAII, LTD.,
a Hawaiʻi Corporation, Respondent.

SCAP-10-0000131

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P. NO. 94-0337)

FEBRUARY 27, 2015

NAKAYAMA, ACTING C.J.,
CIRCUIT JUDGE NACINO, IN PLACE OF RECKTENWALD, C.J., RECUSED,
CIRCUIT JUDGE TRADER, IN PLACE OF McKENNA, J., RECUSED, AND
CIRCUIT JUDGE LEE IN PLACE OF WILSON, J., RECUSED,
WITH POLLACK, J. DISSENTING

OPINION OF THE COURT BY NAKAYAMA, J.

## I. INTRODUCTION

Investors Equity Life Holding Company (IELHC) is the former parent company and sole shareholder of Investors Equity Life Insurance Company of Hawaii, Ltd. (IEL). In 1994 IEL was liquidated, thus creating the IEL estate. The State of Hawaiʻi Insurance Commissioner (Commissioner) was appointed as IEL's liquidator (Liquidator). This case concerns the Liquidator's denial of IELHC's purported claim to all remaining assets of the IEL estate.

In 1996, IELHC surrendered all of its shares in IEL to the Commissioner as part of a settlement agreement to resolve claims relating to IEL's insolvency. The Liquidator canceled IELHC's shares in IEL and issued new shares in IEL to the Hawaii Life and Disability Insurance Guaranty Association (HLDIGA).[1] As consideration for these new shares in IEL, HLDIGA cancelled $249,975 of its claims against IEL's estate arising out of its subrogation of covered IEL policyholders' claims.

The Liquidator proceeded to administer IEL's estate -- marshaling assets, distributing funds, and filing interim reports. More than eleven years elapsed before, in 2008, IELHC

_____

[1] The Hawaiʻi legislature created HLDIGA pursuant to Hawaiʻi Revised Statutes (HRS) § 431:16-201 (2005), to protect policyholders of insolvent life and disability insurance companies by providing them with continued coverage.

2

wrote the Liquidator two letters claiming that IELHC presently held legal or equitable title to all of IEL's stock and demanding that the Liquidator deliver to IELHC all shares and assets remaining in IEL's estate.

After failing to resolve the dispute through mediation, IELHC filed a lawsuit in the Superior Court of California against current and former Insurance Commissioners, as well as other individuals involved in the liquidation of IEL (the California Lawsuit). The action was stayed on the grounds of forum non conveniens.[2]

In 2009, the Liquidator determined that IELHC's letters and its California Lawsuit constituted a claim against IEL's estate. The Liquidator denied the claim, and his determination was upheld by order of the Circuit Court of the First Circuit (circuit court).

IELHC appealed to the Intermediate Court of Appeals (ICA) and applied for mandatory and discretionary transfer to this court. We accepted IELHC's application for discretionary transfer on the grounds that the appeal presents a question of first impression of whether IELHC's letters to the Liquidator and the California Lawsuit constituted a claim against IEL's estate

---

[2]    Black's Law Dictionary 770 (10th ed. 2014) defines forum non conveniens as "[t]he doctrine that an appropriate forum -- even though competent under the law -- may divest itself of jurisdiction if, for the convenience of the litigants and the witnesses, it appears that the action should proceed in another forum in which the action might also have been properly brought in the first place."

under Hawaiʻi Revised Statutes (HRS) § 431:15-329 (2005).

In its opening brief, IELHC raises five points of error[3]: (1) "The circuit court below had no subject matter jurisdiction to confirm an 'IELHC claim' which [Commissioner] Schmidt himself contrived, but which appellant has not brought"; (2) "The circuit court had no personal jurisdiction over appellant"; (3) "Because the California lawsuit is a prior pending action, the 'IELHC claim' which [Commissioner] Schmidt invented must be abated"; (4) "The summary procedures utilized by the circuit court denied appellant's rights to due process"; and (5) "Even if appellant had brought the 'IELHC claim,' which appellant had not, [Commissioner] Schmidt is judicially estopped from asserting that appellant's claim is too late."  We hold that the circuit court did not err in concluding that IELHC asserted a claim against IEL's estate and that this claim was time barred. Furthermore, the circuit court had personal jurisdiction over IELHC and subject matter jurisdiction over IELHC's claim, there were no grounds for abating the adjudication of IELHC's claim, and the circuit court's procedures met constitutional due process requirements.

---

[3]   The section of IELHC's opening brief entitled "Statement of the Points of Error on Appeal" contains fifteen unnumbered paragraphs citing various Findings of Fact and Conclusions of Law from the circuit court's order that the brief purports to challenge.  However, IELHC does not set out specific arguments regarding these points in the arguments section of its brief.  Instead, the argument section is divided into five subsections which are characterized as the points of error.

## II. BACKGROUND

### A.   The liquidation of Investors Equity Life Insurance Company of Hawaii

IEL was an insurer whose business consisted of deferred annuities and traditional and interest-sensitive life insurance policies.  On August 5, 1994, then State of Hawaiʻi Insurance Commissioner Lawrence Reifurth commenced an insurance insolvency proceeding by filing a petition for the liquidation of IEL in the circuit court, pursuant to the Insurers Supervision, Rehabilitation and Liquidation Act (ISRLA),[4] HRS §§ 431:15-306 (1993)[5] and 431:15-301 (1993).  IEL had a net deficit in excess

---

[4]    The purpose of ISRLA then, as it is now, was:

> [T]he protection of the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers, through:
> (1)   Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures;
> (2)   Improved methods for rehabilitating insurers, involving the cooperation and management expertise of the insurance industry;
> (3)   Enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation;
> (4)   Equitable apportionment of any unavoidable loss;
> (5)   Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this State; and
> (6)   Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business.

HRS § 431:15-101(d) (1993).

[5]    The Commissioner cited HRS § 431:15-306 as the statutory authority for the liquidation order.  The statute provided then, as it does now:

(continued...)

5

of $90,000,000, and the Commissioner had seized its assets on June 22, 1994.

The petition for liquidation sought liquidation on the grounds that IEL was insolvent and that attempts to rehabilitate IEL would substantially increase the risk of loss to policyholders, would be futile, and would serve no useful purpose.[6]

Appellant IELHC -- IEL's parent company and sole shareholder -- intervened in the proceeding by stipulation of the

_____

[5](...continued)
> The commissioner may petition the circuit court of the first judicial circuit for an order directing the commissioner to liquidate a domestic insurer or an alien insurer domiciled in this State on any ground on which the commissioner may apply for an order of rehabilitation under section 431:15-301, whenever the commissioner believes that attempts to rehabilitate the insurer would substantially increase the risk of loss to its creditors, its policyholders or the public, or would be futile, or that rehabilitation would serve no useful purpose, whether or not there has been a prior order directing the rehabilitation of the insurer.

HRS § 431:15-306.

[6]   The Commissioner cited HRS § 431:15-301 as providing the following grounds for the basis of the petition for liquidation:

> (1)   The insurer is insolvent;
> (2)   The insurer is in such condition that the further transaction of business would be hazardous, financially, to its policyholders, creditors or the public;
>
> . . . .
>
> (12)  The insurer has failed to file its annual report or other financial report required by statute within the time allowed by law and, after written demand by the commissioner, has failed to give an adequate explanation immediately . . .

6

parties. IELHC opposed the petition for liquidation and petitioned for approval of a rehabilitation plan wherein IELHC would contribute assets to IEL that would generate a potential cash flow of more than $87,000,000.

The circuit court[7] concluded that IELHC's rehabilitation plan was "not reasonable or feasible." The court further concluded that, pursuant to HRS § 431:15-104(c) (1993), only the Commissioner could seek approval of a rehabilitation plan and, pursuant to HRS § 431:15-305 (1993), only directors of an insurer could object to a petition for liquidation. The court granted the petition for liquidation, ordered the liquidation of IEL under the Commissioner's supervision, appointed the Commissioner as liquidator of IEL, and directed the Liquidator to take possession of IEL's assets and administer them under the general supervision of the court. Judgment on the petition for liquidation was entered in favor of the Commissioner and against IEL and IELHC on January 27, 1995.

IELHC appealed the judgment. The appeal was dismissed by a January 11, 1996 opinion of this court, holding that IELHC did not have standing to oppose the petition to liquidate IEL because HRS § 431:15 did not recognize the interests of shareholders -- such as IELHC -- of an insolvent insurer. See Metcalf v. Investors Equity Life Ins. Co., 80 Hawaiʻi 339, 340,

---

[7]     The Honorable Patrick K.S.L. Yim presided.

910 P.2d 110, 111 (1996) (hereinafter Metcalf v. IEL).[8]

During the pendency of the appeal, the circuit court,[9] by order on August 23, 1995, approved the Liquidator's liquidation plan for the disbursement of IEL's assets. The order established a claims bar date of December 1, 1995 for the submission of creditor claims to IEL assets. The order also approved a service agreement between the Liquidator and HLDIGA and approved disbursements to HLDIGA. Under the agreement, HLDIGA assumed policy coverage for the vast majority of policyholders -- all but about 100 of approximately 13,000 -- and the policyholders covered by HLDIGA were deemed to have assigned and subrogated all of their claims against IEL's estate to HLDIGA. As of November 30, 1995, HLDIGA had $143,000,000 in claims against IEL's estate due to HLDIGA's assumption of IEL's policyholder liabilities.

As part of the liquidation plan, on March 22, 1995, the Liquidator, HLDIGA, and Hartford Life Insurance Company (Hartford),[10] the assuming insurer, entered into an Assumption Reinsurance Agreement, which was approved by the circuit court on

---

[8]    Wayne Metcalf succeeded Lawrence Reifurth as Insurance Commissioner in 1995.

[9]    The Honorable Virginia L. Crandall presided during the hearing. The Honorable Wendell K. Huddy issued the order.

[10]    The Liquidator and HLDIGA chose Hartford after an extensive bidding process in which several healthy insurance companies submitted offers to assume IEL's policies in exchange for funds from IEL's estate and HLDIGA. Hartford was selected because its bid offered the greatest benefit to IEL policyholders and creditors.

June 21, 1995.[11]  Under the agreement, Hartford reinsured all of IEL's policyholders previously assumed by HLDIGA.  HLDIGA retained continuing obligations to contribute to the funding of the policies Hartford assumed.

**B.    The Commissioner's lawsuit against Investors Equity Life Holding Company**

Contemporaneously with the liquidation of IEL, then-Commissioner Lawrence Reifurth brought suit against IELHC and Gary Vose (the sole shareholder, director, and President of IELHC), among others, for alleged tortious misconduct in causing the failure of IEL.  The Commissioner's complaint, filed November 17, 1994, alleged that IELHC diverted IEL's assets into risky investments and reckless real estate transactions, primarily for the benefit of non-IEL entities.  IELHC settled the lawsuit with the Commissioner by executing a settlement agreement on July 16, 1996.  As a condition of settlement, the agreement provided that IELHC surrender to IEL all of its shares in IEL for cancellation and forfeiture.  On October 9, 1996, Gary Vose, on behalf of IELHC, surrendered 208,693 shares of IEL to Commissioner Metcalf, for "cancellation and forfeiture pursuant to HRS § 431:5-101."  To evidence the surrender, Gary Vose executed a document entitled "Stock Surrender and Forfeiture," to which he attached the original stock certificate.

---

[11]    The Honorable Virginia L. Crandall presided.

The circuit court,[12] in the liquidation proceeding, held a hearing on the Motion to Approve Settlement Agreement on October 28, 1996 and approved the agreement on November 8, 1996. Counsel for IELHC appeared at the hearing. On November 27, 1996, IELHC, through its president Gary Vose, executed a Waiver of Right of Appeal of Order Granting Liquidator's Motion to Approve Settlement Agreement, in which it "waive[d] and release(d) any and all rights [it had], or may in the future have, to appeal from, or otherwise seek judicial review or reconsideration of, the Order Granting Motion to Approve Settlement Agreement, including any and all written orders, findings of fact, conclusions of law, decisions and/or judgments relating to the Order Granting Motion to Approve Settlement Agreement."

On November 12, 1996, the Liquidator executed a stock subscription agreement between IEL and HLDIGA. Through this agreement, the Commissioner issued 49,500 new shares of IEL stock to HLDIGA. In exchange, HLDIGA canceled $249,975 of its $143,000,000 in claims against the IEL estate resulting from its assumption of IEL's policyholder liabilities and its continuing obligations to Hartford. HLDIGA established the Hawaii Association Grantor Trust, overseen by Buck & Associates with Fred Buck as trustee, to hold the shares. The agreement stated that IEL had 208,693 outstanding shares of capital stock held by

_____

[12]     The Honorable Elwin Ahu presided.

IELHC, owned by Gary Vose, and that IELHC had agreed to surrender the issued stock for cancellation and forfeiture under its settlement agreement with the Liquidator.  The stock subscription agreement pledged that, simultaneously with the surrender and cancellation of all shares of IEL common stock held by IELHC, IEL would issue 49,500 shares of common stock to the Hawaii Association Grantor Trust for the benefit of HLDIGA.

The Liquidator filed a motion to approve the amendments to settlement agreement and to approve the stock subscription agreement on December 12, 1996 and served IELHC with the motion and notice of hearing.  The amendments to the agreement were attached to the motion as Exhibit A, and the stock subscription agreement was attached as Exhibit 1 to Exhibit B.[13]  On December 27, 1996, at the hearing on the motion, counsel for IELHC, Kimble Cook and Lyle Hosoda, appeared and stated that IELHC had no objections.[14]  The circuit court,[15] in the liquidation proceeding, approved the agreement on December 30,

---

[13]     Though the exhibits to the motion are not included in the record, Judge Nakatani referenced the exhibits in her order, as did counsel for IELHC during his appearance on December 27, 1996.

[14]     IELHC's counsel Mr. Cook stated:

> "We have no objections to Exhibit A, which is the first amendment to the settlement agreement.  Exhibit B and Exhibit 1 that they've also attached is a separate subscription agreement.  I just want to make it clear that that's not part of the settlement agreement.  And we have no -- basically no position on that."

[15]     The Honorable Gail C. Nakatani presided.

1996.

## C.    IELHC's claims to the ownership and property of IEL

The Liquidator proceeded to administer IEL's assets, make partial distributions of funds to HLDIGA, and file interim reports with the circuit court.[16]  The Liquidator's February 27, 2008 report showed a deficit of approximately $13,000,000 in IEL's estate as of December 31, 2008.

HLDIGA remains a significant creditor of IEL's estate. In 2002, it submitted an updated Proof of Claim asserting a claim against IEL for $174,961,455 as a Class 2[17] and Class 4[18] creditor and for the residual amount of the estate as a Class 9[19] creditor, as the sole shareholder of IEL.  At that time, the claim had been partially satisfied, leaving a claim amount of $38,580,355 plus HLDIGA's shareholder claim for any residual assets in IEL's estate.  Since then, the Liquidator has

---

[16]    The first such report appearing in the record was filed December 22, 1995.  This report shows that, as of November 30, 1995, IEL had a net deficit of $101,724,000 and outstanding liabilities to HLDIGA of $143,000,000.

[17]    At the time of HLDIGA's filing of a proof of claim, HRS § 431:15-332 (1993) stated: "[t]he priority of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is herein set forth.  Every claim in each class shall be paid in full or adequate funds retained for the payment before the members of the next class receive any payment."  Class 2 claims included, "[t]he reasonable expenses of a guaranty fund or association, or foreign guaranty association in handling claims."  HRS § 431:15-332(b).

[18]    At the time of HLDIGA's claim, Class 4 claims included, "[a]ll claims under policies for losses incurred, including . . . all claims of a guaranty fund or association or foreign guaranty association."  HRS § 431:15-332(d).

[19]    At the time of HLDIGA's claim, Class 9 claims included, "[t]he claims of shareholders or other owners."  HRS § 431:15-332(i).

distributed $3,336,943 to HLDIGA for administrative expenses incurred.  As of 2009, the Liquidator's records showed an outstanding creditor claim of $35,243,412 to HLDIGA, not including any additional amount that may be due for administrative expenses incurred and interest accrued since the date of its claim.

On April 23, 2008, IELHC wrote then Liquidator J.P. Schmidt a letter (first letter), claiming that the February 27, 2008 report "materially misstated and misrepresented" the financial condition of IEL's estate and that the estate had a surplus of more than $21,000,000, not a deficit.[20]  IELHC also claimed that the Commissioner's 1996 "taking," or "attempt at such taking," of IEL's stock was "not in accordance" with Hawaiʻi law and that the disposition of the stock to HLDIGA was a "further taking without just compensation and ultra vires acts beyond the statutory authority of the Insurance Commissioner." Consequently, IELHC claimed that it presently had "equitable title, legal title, or both to IEL's stock" and demanded that the Commissioner deliver "all authorized, issued, and outstanding shares of stock of IEL" and distribute "the remaining surplus of

---

[20]     IELHC reached this conclusion from observing that the February 27, 2008 report showed a net liability of $35,243,412 to HLDIGA and a net deficit (negative net worth) of $13,728,856.  IELHC asserts that any liability to HLDIGA is false and therefore must be removed from the balance sheet. Subtracting negative $35,243,412 from a negative net worth of $13,728,856, results in a net surplus (positive net worth) of $21,514,556 ((-13,728,856) - (-35,243,412)= + 21,514,556).

13

the estate."

IELHC reasserted title to IEL's stock in a July 2, 2008 letter to the Liquidator (second letter). The second letter stated that the Liquidator's and HLDIGA's claims to ownership of IEL's stock were "far from free and clear, and are subject to doubt and dispute." IELHC posited that its surrender of IEL shares made the shares "forfeitable," but not necessarily "forfeited." Citing the statute governing the "Impairment of Capital," HRS § 431:5-101 (2005),[21] IELHC asserted that "[u]nless and until [the shares were] actually forfeited, they necessarily remain[ed] IEHLC's [sic] shares even though the insurance Commissioner [sic] may have physical possession of them." IELHC suggested that the parties employ a professional mediator and seek "a mutually agreeable resolution."

The Commissioner and IELHC participated in voluntary

---

[21] HRS § 431:5-101 provided then, as it does now, in pertinent part:

(a)(1) A domestic stock insurer's capital stock shall be deemed to be impaired if its qualified assets at any time are less than its liabilities, including its capital stock as a liability.
(2) If a domestic insurer's capital stock is deemed to be impaired, the commissioner shall at once determine the amount of the deficiency and serve notice upon the insurer to cure the deficiency within ninety days after service of such notice.

. . . .

(c) Shares as to which such an assessment, made pursuant to this section, is not paid within sixty days after demand, shall be forfeitable and may be canceled by vote of the directors and new shares issued to make up the deficiency.

(Emphasis added).

14

formal mediation through the end of 2008, but they were unable to negotiate a resolution of IELHC's claims.

On May 4, 2009, IELHC filed a complaint in the California Superior Court against: then-Commissioner Schmidt; former-Commissioner Reifurth; HLDIGA; Hawaii Association Grantor Trust; Buck & Associates and Fred Buck as trustees of the Hawaii Association Grantor Trust; Kerry Komatsubara in his individual and official capacity as Special Deputy Liquidator of IEL; Timothy Bogan in his capacity as the Former Chief Examiner of the Hawaiʻi Division of Insurance; and McCorriston Miho Miller Mukai LLP, and William McCorriston and John Yamano individually, as Commissioner Schmidt's former attorneys. The complaint reasserted IELHC's claims of a surplus in IEL's estate and of an unconstitutional taking of its IEL stock, as well as claims for denial of due process and equal protection, unreasonable seizure, unconstitutional taxation, fraud, negligent misrepresentation, breach of fiduciary duty, conversion, unfair competition, civil conspiracy, and aiding and abetting.

In the complaint, IELHC specifically asserted that it had demanded all outstanding shares of IEL stock and made a claim to distributions from IEL's estate:

> 56.   Promptly upon discovery of the relevant facts and circumstances giving rise to this action, by letter sent on April 23, 2008 Plaintiff served a demand upon Schmidt, through their respective attorneys, for Schmidt to deliver to Plaintiff all of the authorized, issued, and outstanding shares of stock of IEL, and any certificates representing said shares; and claim to distribution of the monies and

> assets remaining in the estate of IEL.
>
> 57.    Schmidt has failed and refused to deliver to Plaintiff all of the authorized, issued, and outstanding shares of stock of IEL, and any certificates representing said shares; and claim to distribution of the monies and assets remaining in the estate of IEL.

The complaint sought compensatory damages of $60,000,000, punitive damages, an accounting, an injunction, a constructive trust over all assets in IEL's estate, restitution, declaratory relief, and attorneys' fees.  The complaint specifically sought a declaration that IELHC "has legal and equitable right, title and interest in the monies and assets remaining in the estate of and in IEL's stock, and shares, certificates, and value of such stock."

By order dated October 6, 2009, the Superior Court of the State of California stayed the action, on motion by the Commissioner, on grounds of forum non conveniens.  The California Court of Appeal affirmed the order by opinion dated May 31, 2011. Investors Equity Life Holding Co. v. Schmidt, 126 Cal. Rptr. 3d 135, 139 (Cal. Ct. App. 2011) (hereinafter IELHC v. Schmidt). The court reasoned that the only significant question on appeal was whether Hawaiʻi constituted a suitable alternative forum in light of the possible expiration of the statute of limitations. Id. at 142-43.  It stated:

> Defendants have agreed to toll the statute of limitations from February 25, 2009, the date plaintiff filed its California action, to the date plaintiff files suit in Hawaii.  Their second stipulation makes clear that, if this action is refiled in Hawaii, one issue will be the timeliness of any claims time barred in that state as of

16

> February 25, 2009. . . . In addition, they argue Hawaii, like California, recognizes the delayed accrual of a claim where the plaintiff is reasonably ignorant of it, plus the tolling of a statute of limitations where a defendant conceals the existence of a cause of action.

Id. at 144.  Because IELHC would face the same burden of establishing the timeliness of its claim in California or Hawaiʻi, the California Court of Appeal concluded that the trial court's stay was proper.  Id. at 146.

## D.   Adjudication of IELHC's claims against IEL's estate

On November 20, 2009, the Liquidator issued a Notice of Determination of Claim Submitted by [IELHC] pursuant to HRS § 431:15-329(a).[22]  In the Notice of Determination, the Liquidator stated that IELHC's first and second letters, and IELHC's May 4, 2009 California Lawsuit, constituted a claim to assets of IEL's estate made by IELHC.  The Liquidator denied the claim and concluded that "the entire IELHC Claim fails because IELHC has not established that it is either the shareholder of [IEL], or that it was wrongfully deprived of its ownership of shares of [IEL]."  The Liquidator reasoned that IELHC's claim to all shares of IEL stock was without merit because IELHC voluntarily

---

[22]    HRS § 431:15-329(a) provided then, as it does now:

(a) When a claim is denied in whole or in part by the liquidator, written notice of the determination shall be given to the claimant or the claimant's attorney by first class mail at the address shown in the proof of claim. Within sixty days from the mailing of the notice, the claimant may file any objections with the liquidator.  If no such filing is made, the claimant may not further object to the determination.

17

surrendered and forfeited its shares of IEL stock as a condition of the 1996 settlement agreement. Furthermore, IEL's purported Class 9 shareholder claim was subordinate to all higher priority claims, there were insufficient assets available for distribution to Class 9 shareholders, and IELHC's claim was untimely inasmuch as the August 23, 1995 order approving the Commissioner's liquidation plan established December 1, 1995 as the claims bar date.

On January 15, 2010, IELHC timely filed objections to the Liquidator's determination. IELHC argued that the Liquidator had no personal jurisdiction over IELHC, the Liquidator had no subject matter jurisdiction "over what the Liquidator purports to be a 'claim' asserted by [IELHC]," and the Liquidator was barred from making the purported determination. Specifically, IELHC argued that: (1) the Liquidator was disqualified from making the determination because the Liquidator -- as a defendant in IELHC's California Lawsuit -- had a personal interest in the matter that prevented him from providing disinterested, objective advice; (2) IELHC did not submit a claim or proof of claim to the Liquidator; (3) the California Lawsuit's assertion of claims against the Liquidator was not an assertion of claims against the estate of IEL; (4) IELHC's "claim," as defined by the Liquidator, is not the type of claim considered by HRS § 431:115-329; and (5) the Liquidator had "no jurisdiction, right, or authority unilaterally

18

to assume jurisdiction over the California Action or any of the claims or causes of action alleged therein." IELHC demanded that the Liquidator immediately withdraw the November 20, 2009 determination."

The Liquidator rejected IELHC's arguments and declined to withdraw the November 20, 2009 determination. Pursuant to HRS § 431:15-329(b),[23] on May 11, 2010, the Liquidator filed a Motion for an Order Confirming the Liquidator's Determination of a Disputed Claim in the circuit court liquidation case. He argued that the denial of IELHC's claim should be confirmed for the reasons cited in the November 20, 2009 determination and that the "undisputed record" of the liquidation proceedings supported a denial of IELHC's claim.

HLDIGA filed a Joinder in Liquidator's Motion for an Order Confirming the Liquidator's Determination of a Disputed Claim on May 21, 2010.

IELHC opposed the Liquidator's motion and moved to dismiss it. IELHC argued that: (1) IELHC never filed a claim

_____

[23]     HRS § 431:15-329(b) provided then, as it does now:

> (b) Whenever objections are filed with the liquidator and the liquidator does not alter the denial of the claim as a result of the objections, the liquidator shall ask the court for a hearing as soon as practicable and give notice of the hearing by first class mail to the claimant or the claimant's attorney and to any other persons directly affected, not less than ten nor more than thirty days before the date of the hearing. The matter may be heard by the court or by a court appointed referee who shall submit findings of fact along with such referee's recommendations.

19

with the Liquidator and therefore the circuit court lacked subject matter jurisdiction over the Liquidator's motion; (2) IELHC had a constitutional right to a jury trial to determine the disputed ownership of the IEL stock; (3) the Liquidator had no right or authority to determine the ownership of IEL's stock because it was not a part of IEL's estate; (4) the Liquidator had a conflict of interest in "fabricating" and adjudicating IELHC's "claim" while being a defendant accused of misconduct in IELHC's California Lawsuit; (5) the Liquidator's procedures did not afford IELHC administrative or procedural due process; (6) the circuit court lacked personal jurisdiction over IELHC; (7) because the California Lawsuit involved many of the same issues between the same parties, abatement of the Liquidator's motion was necessary; and (8) the Liquidator's determinations regarding the ownership of IEL's stock constituted an attempt to enforce a settlement agreement, which would necessitate filing a separate action. IELHC also opposed HLDIGA's joinder, stating that HLDIGA has no standing under HRS § 431:15-329.[24]

The circuit court[25] granted the Liquidator's motion and denied IELHC's motion to dismiss by Findings of Fact, Conclusions

---

[24] In its Reply Brief to HLDIGA's Answering Brief, IELHC again claims that HLDIGA does not have standing and should not have been granted intervenor status. However, this argument was waived on appeal because IELHC did not raise it in its opening brief. See Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (2010) ("Points not argued may be deemed waived.").

[25] The Honorable R. Mark Browning presided.

of Law and Order entered on October 6, 2010. The circuit court concluded, in relevant part:

<u>Conclusions of Law</u>

. . . .

3.    In its letters to the Liquidator dated April 23, 2008 and July 2, 2008 and its First Amended Complaint filed in the California Lawsuit, IELHC asserts that it is entitled to all IEL stock and all residual assets in IEL's estate. . . . These assertions constitute claims against the IEL estate within the meaning if [sic] ISRLA.

4.    A party cannot avoid the substantive requirements of a law by failing to follow the procedural requirements of the law. A demand to a liquidator for payment of money or transfer of property out of the insolvent insurer's estate, by one claiming a right to such funds or property, is a "claim" within the meaning of ISRLA, regardless of the form in which it is asserted.

5.    Resolution of who owns and has rights to IEL's stock determines a potential right to distribution from the estate of IEL. . . .

6.    <u>The Court concludes that IELHC has asserted a claim against the estate of IEL under ISRLA, which claim the Liquidator has denied.</u>

7.    ISRLA requires the Court to determine disputed claims . . . [pursuant to] H.R.S. § 431:15-329.

8.    To permit parties to assert claims against the IEL estate in various forms (including as lawsuits elsewhere) and not recognize those claims as claims against the IEL estate under ISRLA would undermine the purpose of ISRLA to protect "the interests of insureds, claimants, creditors, and the public generally . . . through . . . [e]nhanced efficiency and economy of liquidation [] to minimize legal uncertainty and litigation; [and] [e]quitable apportionment of any unavoidable loss." H.R.S. § 431:15-101(d). . . .

9.    <u>This Court has the duty to resolve IELHC's claim pursuant to H.R.S. § 431:15-329(b), and has subject matter jurisdiction over the Liquidator's Motion for an Order Confirming the Liquidator's Determination of a Disputed Claim Pursuant to H.R.S. Section 431:15-329(b).</u>

. . . .

13.    IELHC has been and remains a party to this proceeding by virtue of its intervention and extensive participation in the proceedings over many years. <u>Further, this Court concludes that it has personal jurisdiction over IELHC</u> and that service of process on IELHC was sufficient.

21

. . . .

18. <u>IELHC is not the legal or equitable shareholder of IEL.</u> IELHC has presented no evidence to demonstrate an entitlement to the IEL stock or to demonstrate that it was wrongfully deprived of its IEL shares. . . . The [1996] Stock Subscription Agreement was lawful, proper and approved by this Court nearly 14 years ago after a hearing at which IELHC's counsel appeared.

19. IELHC voluntarily relinquished its shares as part of the Settlement Agreement approved by this Court. The record affirmatively demonstrates that IELHC has no current interest in IEL's estate and is not entitled to a distribution from the IEL estate as a shareholder of IEL. IELHC does not have any current legal or equitable interest in IEL's stock and IELHC was not wrongfully deprived of its shares.

. . . .

30. Insurance liquidations are considered equitable proceedings. . . . Accordingly, <u>ISRLA does not provide for jury trials of creditor claims.</u> The absence of provisions for jury trials in such proceedings does not offend the Constitution.

. . . .

36. This Court concludes that the Liquidator does not have a conflict of interest and that <u>there is no basis which would disqualify the Liquidator from making a determination on the IELHC claim</u> or moving for confirmation of the denial of the IELHC claim. . . .

37. . . . [T]his Court has exclusive jurisdiction over claims against IEL's estate and is obligated to resolve them. As a result <u>this Court may not properly abate the Liquidator's Motion.</u>

The circuit court also concluded that IELHC's claim was time

barred:

IELHC's contention that it was not aware of its claim until March of 2008 is contrary to the record. . . . [T]he record shows that IELHC knew long ago it no longer was a shareholder in IEL, that HLDIGA was the beneficiary of the IEL stock, and that HLDIGA was receiving distributions from the IEL estate. In addition, IELHC has not established that any statutory authority permits the late filing of its claim.

On November 4, 2010, IELHC timely appealed the circuit

22

court's order to the ICA.[26]

After the briefs were filed, on November 16, 2011, IELHC filed an application for transfer to this court. The Liquidator and HLDIGA filed oppositions to the application on November 22, 2011. The application for transfer was granted on December 16, 2011.

## III. STANDARDS OF REVIEW

### A. Conclusions of Law

"We review the [circuit] court's conclusions of law de novo under the right/wrong standard." Metcalf v. Voluntary Emps. Benefit Ass'n of Haw., 99 Hawaiʻi 53, 57, 52 P.3d 823, 827 (2002).

### B. Jurisdiction

The existence of jurisdiction is a question of law, reviewed de novo. Dupree v. Hiraga, 121 Hawaiʻi 297, 312, 219 P.3d 1084, 1099 (2009).

### C. Statutory Interpretation

Statutory interpretation is reviewable de novo. Haw.

---

[26] The October 6, 2010 order was entered in the post-judgment proceeding in S.P. No. 94-0337 to determine IELHC's disputed claim to assets of the IEL estate. The order ended the circuit court proceeding to determine the disputed claim and is a final order of the circuit court appealable under HRS § 641-1(a) (Supp. 2012). See HRS § 641-1(a) ("Appeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts and the land court to the intermediate appellate court . . . ."); see also Familian Nw. Inc. v. Cent. Pac. Boiler & Piping, Ltd., 68 Haw. 368, 370, 714 P.2d 936, 937 (1986) (holding an order entered in a post-judgment proceeding to be an appealable final order if it ends the post-judgment proceeding).

State Teachers Ass'n v. Abercrombie, 126 Hawaiʻi 318, 320, 271 P.3d 613, 615 (2012).  We observe the following principles when interpreting statutes:

> "First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.  And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning."

Id. (quoting Haw. Gov't Emps. Ass'n v. Lingle, 124 Hawaiʻi 197, 202, 239 P.3d 1, 6 (2010)).

## IV. ANALYSIS

### A. Standard of Review for Liquidation Proceedings

Before reaching the issues raised on appeal, we must first determine what standard of review to afford the decisions of a circuit court during liquidation proceedings (the liquidation court).  This is a question of first impression in Hawaiʻi.

IELHC argues that the liquidation court's "summary adjudication procedure" was akin to the procedure involved in an order granting or denying summary judgment.  Therefore, it reasons, we should review the circuit court's decision de novo.

The Liquidator argues that the liquidation court's

24

review is similar to the circuit court's review of an equitable receivership. The circuit court's decisions regarding an equitable receivership are reviewed under the abuse of discretion standard. Therefore, it reasons, we should review the liquidation court's decision for abuse of discretion. It emphasizes that the liquidation court was not reviewing a summary judgment motion but was instead reviewing a liquidator's motion pursuant to HRS § 431:15-329.

There is precedent from other states recommending treating a liquidation court as a court of equity, even though the court's authority derives from statute rather than equitable principles. Oklahoma courts consider insurance liquidation proceedings to be of "equitable cognizance." State ex rel. Crawford v. Indemnity Underwriters Ins. Co., 943 P.2d 1102, 1103 (Okla. Civ. App. 1997). Similarly, the Nebraska Supreme Court held that liquidation proceedings are equitable proceedings. See State ex rel. Wagner v. Amwest Sur. Ins. Co., 738 N.W.2d 813, 816-17 (Neb. 2007). That court stated that whether an action is in equity is determined by "the essential character of [the action] and the remedy or relief it seeks." Id. It reasoned that the Nebraska liquidation act's "stated purpose is the protection of the interests of the insureds, claimants, creditors, and the public through various means, including 'equitable apportionment of any unavoidable loss'" and

"'equitable allocation of disbursements'" Id. at 817
(alterations omitted) (quoting Neb. Rev. Stat. §§ 44-4801(4) and
44-4834(c) (Reissue 1998)).  Because of the central role of
equity in liquidation determinations, the Nebraska Supreme Court
concluded that liquidation proceedings were equitable.[27] Id. at
816-17.

Several other states review the decisions of a
liquidation court under the abuse of discretion standard, or a
similarly deferential standard.  See In re Exec. Life Ins. Co. v.
Aurora Nat'l Life Assurance Co., 38 Cal. Rptr. 2d 453, 460 (Cal.
Ct. App. 1995) ("We . . . test the action of the trial court [in
liquidation proceedings] by the abuse of discretion standard.");
In re Frontier Ins. Co., 945 N.Y.S.2d 866, 876 (N.Y. Sup. Ct.
2012) ("[T]he Court recognizes the deferential standard of review
applicable to the Rehabilitator's actions."); State v. Interstate
Cas. Ins. Co., 464 S.E.2d 73, 77 (N.C. Ct. App. 1995) ("Because
of the discretionary nature of [North Carolina liquidation law],
we believe the trial court's decision should not be disturbed
absent an abuse of discretion.").  In California, it is well
established that the decisions of liquidation courts are afforded

---

[27]     In Nebraska, although liquidation proceedings are treated as
equitable proceedings, the decisions of the liquidation court are reviewed de
novo because that is the standard of review Nebraska's appellate courts apply
to courts of equity.  Wagner, 738 N.W.2d. at 817.  However, in Oklahoma, the
liquidation court's judgment will not be disturbed "'unless against the clear
weight of the evidence or contrary to law or established principles of
equity.'"  Crawford, 943 P.2d at 1103 (quoting Wetsel v. Johnson, 468 P.2d
479, 481 (Okla. 1970)).

discretionary review:

> "Because the insurer is in liquidation, the scope of our review of determinations of both the superior court and the liquidation trustees in the resolution of claims by insureds against an insolvent carrier is circumscribed. . . . Our high court has long since observed that such conservation proceedings arise under the broad police powers of the state to insure the reorganization or orderly liquidation of insolvent insurers and the protection of their policyholders and the public."

Garmendi v. Golden Eagle Ins. Co., 10 Cal. Rptr. 3d 724, 733 (Cal. Ct. App. 2004) (quoting Low v. Golden Eagle Ins. Co., 128 Cal. Rptr. 2d 423, 430 (Cal. Ct. App. 2002)).

Based on our precedent, and that of other states, we will review the decisions of a liquidation court under the same standard as that of equitable receiverships –- abuse of discretion. In a receivership, a trustee-receiver is appointed to protect property during foreclosure or litigation. Haw. Ventures, 114 Hawaiʻi at 457-58, 164 P.3d at 715-16. A circuit court's decisions regarding equitable receiverships are reviewed under the abuse of discretion standard because of the court's broad discretionary power to appoint receivers and craft remedies to preserve equity. Id. at 456, 164 P.3d at 714.

Although liquidation courts derive their authority from statute, they have similarly equitable goals and the discretion to craft equitable remedies. HRS § 431:15-101 provides that the purpose of Hawaiʻi's insurance liquidation law is "the protection of the interests of the insureds, claimants, creditors, and the public generally" through, in part, "equitable apportionment of

27

any unavoidable loss."  The Liquidator has the authority to "compound, compromise, or in any other manner negotiate the amount for which claims will be recommended to the court, except where the liquidator is required by law to accept claims."  HRS § 431:15-333 (2005).  Furthermore, the Liquidator's distributions must "assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims."  HRS § 431:15-334 (2005).  These statutes demonstrate the broad discretionary powers of the Liquidator and the liquidation court to effect the equitable distribution of assets and apportionment of losses.  Therefore, as with equitable receiverships, liquidation courts should be reviewed under the abuse of discretion standard.  However, a liquidation court's decisions regarding questions of law must be reviewed de novo.  See Voluntary Emps. Benefit Ass'n of Haw., 99 Hawaiʻi at 57, 52 P.3d at 827.

**B.   IELHC's Claim under HRS § 431:15-326**

As an initial question, we must resolve whether the circuit court abused its discretion in concluding that IELHC submitted a proof of claim to the Liquidator.  Hawaiʻi courts have not previously interpreted this proof of claim statute.  Furthermore, this case is particularly unusual because IELHC attests that its communications did not constitute a claim.

28

Courts in other states have occasionally considered whether a purported claim met the state's statutory proof of claim requirements, but in all of those cases, the purported claimants argued that their communications <u>did</u> constitute a claim.

  1.  <u>IELHC's, the Liquidator's, and HLDIGA's arguments</u>

IELHC argues that its two letters to the Liquidator and the California Lawsuit do not constitute a claim.  It defines a claim as something "(1) filed by a <u>creditor or other claimant</u> (2) <u>with the liquidator</u> under the Hawaiʻi insolvency statutes (3) <u>against the estate of the insolvent insurer</u>."  IELHC characterizes its first letter as "a pre-litigation demand letter": a demand for stock -- which is not an asset in IEL's estate -- and notice that IELHC would seek damages for fraud and other torts from the Liquidator and others.  IELHC states that its second letter "was sent in the context of a mediation to resolve disputes which include ownership of IEL's stock." Finally, IELHC emphasizes that its First Amended Complaint in the California Lawsuit was not filed "<u>against the IEL estate</u>." Therefore, IELHC concludes that its communications cannot be characterized as a claim because it never purported to be a creditor and it never sought assets from IEL's estate.

The Liquidator argues that IELHC's letters and the California Lawsuit constitute a claim, filed with the Liquidator, against IEL's estate.  The Liquidator quotes language from

29

IELHC's first letter that it characterizes as the claim:

> "[T]he claims of the policyholders, claimants, creditors, and <u>others senior to [IELHC] in the statutory priority of distribution under section 431:15-332</u> of the Hawaiʻi Revised Statutes have apparently been fully paid, liquidated or otherwise protected. <u>As a matter of equity and public policy, [IELHC] as a shareholder, or legal or equitable owner, of the stock of IEL should receive distribution of the remaining surplus of the estate</u>. . . .
>
> . . . .
>
> [I]t is respectfully demanded that the Honorable J.P. Schmidt, Insurance Commissioner of the State of Hawaiʻi, <u>deliver to [IELHC] all authorized, issued, and outstanding shares of stock of IEL, and any certificates representing said shares</u>."

The Liquidator characterizes this as a claim to IEL's stock and "to all residual assets in IEL's estate" made pursuant to HRS § 431:15-332, specifying the order of distribution of claims.

The Liquidator argues that IELHC's second letter and the California Lawsuit provided additional information regarding IELHC's claim. In the second letter, IELHC referred to "<u>IELHC's claims</u>." In the First Amended Complaint in the California Lawsuit, IELHC specifically referred to its first letter as a "claim to distribution of the monies and assets remaining in the estate of IEL." The Liquidator argues that this statement is a judicial admission that bars IELHC from now denying that the first letter constituted a claim.

Finally, the Liquidator cites <u>Checker Motors Corp. v. Executive Life Insurance Co.</u>, 1992 WL 29806 (Del. Ch. Feb. 13, 1992), <u>aff'd as modified by</u>, 614 A.2d 530 (Del. 1992), for the principle that a lawsuit can constitute a claim. In <u>Checker</u>

30

Motors, the court held that a claim for declaratory judgment regarding the respective rights of the claimant and the insolvent insurer, brought outside the liquidation proceedings and in a state where no ancillary receiver had been appointed, was a "claim" under the ordinary definition of the word and under the Uniform Insurers Liquidation Act. Id. at *4. The court reasoned that to hold otherwise would contravene the Act's policy "of avoiding the dissipation of an insurer's assets by reason of its having to defend disparate litigations throughout the country." Id.

HLDIGA supports the Liquidator's interpretation of IELHC's California Lawsuit as a claim. Specifically, it argues that it would undermine the purpose of the ISRLA to permit parties to bring claims against IEL's estate in lawsuits in other states and not recognize those lawsuits as claims against the estate under ISRLA.

2. Statutory interpretation

Hawaiʻi's proof of claim statute, codified at HRS § 431:15-326 establishes the elements of a proof of claim. It provides, in part:

> (a) Proof of claim shall consist of a statement signed by the claimant that includes all of the following that are applicable:
>     (1)   The particulars of the claim including the consideration given for it;
>     (2)   The identity and amount of the security on the claim;
>     (3)   The payments made on the debt, if any;
>     (4)   That the sum claimed is justly owing and that

31

> there is no setoff, counterclaim, or defense to
> the claim;
> (5)     Any right of priority of payment or other
>         specific right asserted by the claimant;
> (6)     A copy of the written instrument which is the
>         foundation of the claim; and
> (7)     The name and address of the claimant and the
>         attorney who represents the claimant, if any.
> (b) No claim need by considered or allowed if it does not
> contain all the information in subsection (a) which may be
> applicable.  The liquidator may require that a prescribed
> form be used, and may require that other information and
> documents be included.
> (c) At any time the liquidator may request the claimant to
> present information or evidence supplementary to that
> required under subsection (a) and may take testimony under
> oath, require production of affidavits or depositions, or
> otherwise obtain additional information or evidence.

HRS § 431:15-326(a)-(c).[28]

In construing this statute we must "give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." <u>Gray v. Admin. Dir. of the Court, State of Haw.</u>, 84 Hawaiʻi 138, 148, 931 P.2d 580, 590 (1997) (quoting <u>State v. Toyomura</u>, 80 Hawaiʻi 8, 18, 904 P.2d 893, 903 (1995)).  Statutory language must be read "'in the context of the entire statute'" and construed "'in a manner consistent with its purpose.'"  <u>Id.</u> (quoting <u>Toyomura</u>, 80 Hawaiʻi at 18-19, 904 P.2d at 903-04).

As discussed above, the purpose of ISRLA is to protect "the interests of insureds, claimants, creditors, and the public

---

[28]  Hawaii's insurance code is based upon the National Association of Insurance Commissioners ("NAC") Model Act.  <u>See</u> 2 Hawaiʻi Insurance Commissioner, <u>Revised and Consolidated Insurance Laws of the State of Hawaiʻi</u> (1986).  HRS § 431:15-326 was adopted from NAC Insurance Code, section 36, and Utah Code Ann. § 31A-27-329.  <u>Id.</u>  The Hawaiʻi legislature adopted this section without any modifications to the model code aside from changing the word "claimants" from plural to singular in HRS § 431:15-326(a)(5).

generally." HRS § 431:15-101. Under ISRLA, the liquidator of an insolvent insurer has broad powers, including the power to: "[e]mploy employees and agents, legal counsel, actuaries, accountants, appraisers, consultants and such other personnel as the liquidator deems necessary"; "[p]ay reasonable compensation to persons appointed"; "[h]old hearings"; "[c]ollect all debts and moneys due and claims belonging to the insurer wherever located"; "[c]onduct public and private sales of the property of the insurer"; "[b]orrow money on the security of the insurer's assets"; "[p]rosecute any action that may exist on behalf of the creditors, members, policyholders, or shareholders of the insurer"; "[e]xercise and enforce all the rights, remedies, and powers of any creditor shareholder, policyholder, or member"; and "to do such other acts not herein specifically enumerated, or otherwise provided for, as may be necessary or appropriate for the accomplishment of or in aid of the purpose of liquidation." HRS § 431:15-310 (2005).

The liquidator's powers in accepting and adjudicating claims are similarly broad. Although ISRLA states that "[p]roof of all claims shall be filed with the liquidator in the form required by section 431:15-326 on or before the last day for filing," it also provides that "the liquidator may consider any claim filed late." HRS § 431:15-325. The liquidator has the authority to "compound, compromise, or in any other manner

33

negotiate the amount for which claims will be recommended to the court."  HRS § 431:15-333.  And, the liquidator's distributions should "assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims."  HRS § 431:15-334.

We have previously interpreted ISRLA to give the Commissioner discretionary power when acting as Liquidator.  We reasoned that "[b]ased upon the statutory scheme and the underlying purposes of the ISRLA, the legislature intended to grant the Commissioner the broad powers to facilitate an orderly liquidation of an insolvent insurance company and to ensure an equitable apportionment between creditors of any losses that may result."  Four Star Ins. Agency, Inc. v. Hawaiian Elec. Indus., Inc., 89 Hawaiʻi 427, 433, 974 P.2d 1017, 1023 (1999).

Reading the language of HRS § 431:15-326 as a whole and in the context of other provisions of ISRLA, it seems that the liquidator has discretionary power to accept proof of claims that do not contain all of the elements enumerated in HRS § 431:15-326(a).  HRS § 431:15-326(a) states the elements that the proof of claim "shall" contain.  We have expressed our doubt and uncertainty as to the meaning of "shall."  See Gray, 84 Hawaiʻi at 150, 931 P.2d at 592.  We have called "shall" a "'CHAMELEON-HUED WORD,'" and commented that "'courts in virtually every

34

English-speaking jurisdiction have held –- by necessity –- that <u>shall</u> means <u>may</u> in some texts, and vice versa.'" <u>Gray</u>, 84 Hawaiʻi at 150, 931 P.2d at 592 (quoting B. Garner, <u>A Dictionary of Modern Legal Usage</u> 939-40 (2d ed. 1995)). "Shall" is also commonly construed to mean "should." <u>See</u> B. Garner, <u>The Redbook: A Manual on Legal Style</u> 454 (2d ed. 2002) ("Although every drafter seems to have heard that <u>shall</u> is a mandatory word . . . courts have often held that it means 'should.'").

The meaning of "shall" in HRS § 431:15-326(a) is clarified by reading the statute in context with HRS § 431:15-326(b). HRS § 431:15-326(b) provides that the liquidator does not "need" to consider a claim which does not contain all the information in subsection (a). This suggests that the liquidator <u>may</u> consider a claim that does not contain all of the information in subsection (a).

This interpretation of the liquidator's broad discretionary powers accords with the interpretations of other courts. We have previously stated that ISRLA, patterned after NAC's Uniform Insurers Liquidation Act (UILA), and specifically ISRLA's liquidation provisions, is similar to the liquidation provisions in New York's insurance laws. <u>Four Star Ins. Agency, Inc.</u>, 89 Hawaiʻi at 433, 974 P.2d at 1023. We concluded that "because Hawaiʻi appellate courts have not yet addressed the scope of the insurance commissioner's power in

35

rehabilitating/liquidating an insolvent insurer, New York's interpretation of their insurance law's provisions governing liquidation is useful in construing HRS ch. 431:15."  Id.

In In re the Liquidation of Union Indemnity Insurance Company of New York, 631 N.Y.S.2d 39 (N.Y. App. Div. 1995), the New York appellate court affirmed the liquidation court's holding that a verified complaint "constitutes substantial compliance with the requirements of [New York's proof of claim statute] and that the claim should be deemed timely filed."  631 N.Y.S.2d at 39.  The court reasoned that although the verified complaint was not a proof of claim under the statute, because it was the "substantial equivalent of a proof of claim," the liquidator must adjudicate the claim.  Id. at 39-40.

Hawaii's and New York's proof of claim statutes are very similar.  New York's proof of claim statute provides:

> (1) A proof of claim shall consist of a written statement subscribed and affirmed by the claimant as true under the penalties of perjury, setting forth the claim, the consideration therefor, any securities held therefor, any payments made thereon, and that the sum claimed is justly owing from the insurer to the claimant.
> (2) If a claim is founded upon an instrument in writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim. . . .

N.Y. Insurance Law § 7433(a) (McKinney's 2012).[29]  Both statutes use the vague term "shall" when listing the claim requirements. Compare HRS § 431:15-326 with N.Y. Insurance Law § 7433(a).  New

---

[29]    This section of New York's Insurance Law has not been amended since the In re the Liquidation of Union Indemnity Insurance Company of New York decision in 1995.

York and Hawaiʻi also have the same proof of claim requirements except that Hawaiʻi additionally requires the claimant to include: (1) any right of priority of payment and (2) the name and address of the claimant's attorney, if any. Id. And, New York's statute, like Hawaiʻi's, does not specifically grant the liquidator power to adjudicate claims which do not comply with the enumerated proof of claim requirements. Id. The only significant difference between the statutes is that under Hawaiʻi law, the liquidator is not required to consider claims which do not contain all of the statutory proof of claim requirements. Id. This difference should in no way limit the liquidator's discretionary power to consider claims which are the "substantial equivalent" of a proof of claim.

Two states have concluded that a claim is not entitled to adjudication when it does not fully comply with the state's statutory proof of claim requirements. However, these cases are easily distinguishable from the present case.

In State ex rel. Clark v. Blue Cross Blue Shield of West Virginia, Inc., 466 S.E.2d 388 (W. Va. 1995), the Supreme Court of Appeals of West Virginia held that where the claimant notified the receiver of its claim by letter, instead of filing a proof of claim on the prescribed form, the claim was not "entitled to filing or allowance, and no action may be maintained with regard to the claim." 466 S.E.2d at 394. In reaching its

37

holding, the West Virginia court relied upon provisions in West

Virginia's insurance liquidation law that stated:

> 'Unless such claim is filed in the manner and within the
> time provided in [the proof of claim statute], it shall not
> be entitled to filing or allowance, and no action may be
> maintained thereon.' W. Va. Code § 33-24-36(f) . . . .
> Further, 'no claim by a policyholder or other creditor shall
> be permitted to circumvent the priority classes through the
> use of equitable remedies.' W. Va. Code § 33-24-27.

Id. at 392 (emphasis and alterations omitted). The court also

reasoned that it had previously followed a doctrine of strict

compliance concerning the provisions of the insurance liquidation

laws and that a substantial compliance standard was inapplicable.

Id. at 393.

The California Court of Appeals has applied a similarly

strict interpretation to its proof of claim statute. In

Garamendi v. Mission Insurance Co., 2005 WL 1549326 (Cal. Ct.

App. July 5, 2005), the court held that a letter from the

claimant, notifying the Commissioner of an estimated $649,000,000

in claims, was not properly filed when it was not filed on the

prescribed proof of claim form and when claimant demonstrated

that it had access to the proof of claim form by later filing an

unsigned and partially blank form for a portion of its claim.

2005 WL 1549326, at *1.

The California court rejected the claimant's arguments

that the letter substantially complied with the claim-filing

requirements. Id. at *5-6. The court reasoned that the

commissioner is bound by the liquidation laws' statutory

procedures.  Id. at *6.  California's liquidation law, at the relevant time, "'require[d] claimants to file their claims with the commissioner, together with proper proofs thereof, within six months after the date of first publication of . . . notice.'" Id. (emphasis omitted) (quoting Cal. Ins. Code § 1021(a)).  The law also provided that "'[a] claim must set forth, under oath, on the form prescribed by the commissioner'" all of the data and supporting documents required by the commissioner.  Id. (emphasis omitted) (quoting Cal. Ins. Code § 1023).  And finally, the law provided that "'[u]nless such claim is filed in the manner and within the time provided in section 1021, it shall not be entitled to filing or allowance, and no action may be maintained thereon.'" Id. (quoting Cal. Ins. Code § 1024).  The court concluded that, based on the unambiguous statutory language and the insurance insolvency legislation's purpose of providing clear and uniform procedures, the commissioner was not required to accept the claimant's letter as a claim.  Id. at *6-7.

The West Virginia and California cases are distinguishable from the present case based on the relevant laws and facts.  In West Virginia, the court favored a narrow interpretation of its insurance liquidation law, which stated that a claim was not entitled to filing or allowance if it was not filed in the manner prescribed by statute.  See State ex rel. Clark, 466 S.E.2d at 394.  Similarly, California's insurance

liquidation law, on its face, was stricter than Hawaiʻi's in stating that, to be entitled to filing or allowance, a proof of claim "must" contain certain elements. See Garamendi, 2005 WL 1549326, at *6. Most significantly, these cases differ from the present case because in neither case did the court conclude that the liquidator was barred from adjudicating the claim. Rather, both courts held only that the liquidator had not erred in refusing to accept the claimant's letter as a timely filed proof of claim.

Based on the purpose and language of ISRLA, as well as our past reliance New York's interpretations of its similar insurance law, we adopt a broad interpretation of Hawaiʻi's proof of claim statute. In accordance with the liquidator's discretionary powers, the liquidator may accept a claim which is in substantial compliance with the proof of claim elements of HRS § 431:15-326.[30]

3.  Analysis of IELHC's letters and the California Lawsuit

Under this discretionary standard, IELHC's letters and its California Lawsuit sufficiently asserted a claim for the Liquidator to administer it as such. IELHC's first letter to the Liquidator substantially complied with HRS § 431:15-326(a). IELHC's second letter provided additional information but did not

---

[30]    This case does not raise, and therefore we need not consider, the issue of whether the liquidator is required to accept a claim that does not conform with HRS § 431:15-326.

state a claim against the estate.  Finally, the California Lawsuit reiterated IELHC's claim from its first letter and may have been sufficient to state a claim independently.

IELHC's first letter to the Liquidator satisfied the majority of the applicable proof of claim elements enumerated in HRS § 431:15-326.  The letter provided the "particulars of the claim including the consideration given for it," HRS § 431:15-326, by stating that IELHC sought "distribution of the remaining surplus of the estate"[31] due to its status as IEL's sole shareholder.[32]  The letter also specified IELHC's priority of payment by specifying that IELHC's claim was based upon its status as a shareholder.  Because there was no security on the

---

[31]     The Dissent argues that we are giving meaning to the term "estate" that the first letter did not intend.  Dissent at 19-20.  However, we agree with the Dissent that the term "estate" refers to "the total assets of the insurer" and that both the first letter and the ISRLA use the term in this way.  See Dissent at 19.  Pursuant to HRS § 431:15-307, possession and title of the insurer's assets, or estate, are vested in the liquidator for the purpose of administration and settlement of claims.  Therefore, a conclusion that IELHC's demand for what was remaining in the estate, which was in the possession of the Liquidator for the purpose of administering claims, was a claim is consistent with the purpose of ISRLA.

[32]     Thus, the Dissent's assertion that "the only demand that can be discerned from the First Letter is for the remaining IEL shares[,]" Dissent at 11, is unavailing because the letter also clearly refers to assets within the estate.  It is accepted that IEL stock was not part of IEL's estate because it was not an asset of IEL, and so the contention that IELHC asserted rights only to something outside of the estate is inconsistent with IELHC's argument in the letter that it "should receive distribution of the remaining surplus of the estate."  IELHC also begins its letter by arguing that the Liquidator's financial statement filed on February 27, 2008, "materially misstates and misrepresents the financial condition of IEL's estate in liquidation."  IELHC challenged the valuation of the estate, not the stock.  Once again, this reference to the estate and the allegation of misrepresentation reveal a clear intent to assert rights to assets within the estate.  Therefore, a reading of the letter such that it is understood to assert rights to both assets within the estate and to IEL stock appears most accurate and persuasive.  As discussed infra, IELHC's California Lawsuit also supports such a reading.

claim and there were no payments on the debt, those proof of claim elements are inapplicable.[33]  See HRS § 431:15-326(a).  The letter also provided the name and address of the attorney through which the claimant could be contacted.  The letter did not comply with HRS § 431:15-326 in that it was not signed by the claimant, though it was signed by the claimant's attorney, and it did not state "that the sum claimed is justly owing and that there is no setoff, counterclaim, or defense to the claim."  It also did not include a copy of any written instruments which were the foundation of the claim, and it did not provide the address of the claimant.  Though these omissions are not insignificant, they are not of a nature to deprive the Liquidator of an understanding of the critical elements of the claim.  The Liquidator was able to identify who submitted the claim, the amount of the claim, and the grounds of the claim.  Therefore, the letter of April 23, 2008 sufficiently complied with the proof of claim requirements to permit the Liquidator to adjudicate IELHC's claim.

IELHC's second letter supplemented its first letter's arguments in support of IELHC's ownership of IEL's stock and requested mediation on that issue.  IELHC's assertion of title in

---

[33]    The Dissent asserts that these elements are inapplicable because there is a "fundamental difference between stock ownership and a debt." Dissent at 15.  The Dissent seems to imply that shareholders and owners, by definition, cannot assert claims against an estate under ISRLA.  However, such an interpretation would run contrary to HRS § 431:15-332, which refers to "[t]he claims of shareholders or other owners" as Class 9 claims, thus, clearly envisioning the possibility of claims asserted by shareholders.

IEL's stock was not a claim against IEL's estate because IEL's stock was not a part of its estate. While the second letter provided additional grounds for IELHC's contention that its shares were never forfeited, it contained no specific claim to the assets of IEL's estate. Therefore, it was insufficient to assert a claim independently.

IELHC's California Lawsuit, and specifically its First Amended Complaint, demonstrated that IELHC intended for its first letter to assert a claim against IEL's estate. In its First Amended Complaint, IELHC states that its first letter constituted a claim which the Liquidator failed to adjudicate. In a section entitled "DEMAND FOR STOCK AND DISTRIBUTION," IELHC states:

> Promptly upon discovery of the relevant facts and circumstances giving rise to this action, by letter sent on April 23, 2008 Plaintiff served a demand upon [Commissioner/Liquidator] Schmidt, through their respective attorneys, for Schmidt to deliver to Plaintiff all of the authorized, issued, and outstanding shares of stock of IEL . . . and claim to distribution of the monies and assets remaining in the estate of IEL.
>
> . . . [Commissioner/Liquidator] Schmidt has failed and refused to deliver to Plaintiff all of the authorized issued, and outstanding shares of stock of IEL . . . and claim to distribution of the monies and assets remaining in the estate of IEL.
>
> . . . Defendants have no legitimate or compelling state interest for taking or depriving Plaintiff of the its [sic] right, title, and interest in the stock, and shares, certificates, and value of such stock of IEL.

The First Amended Complaint in the California Lawsuit may also have been sufficient, independent of IELHC's letters, to assert a claim against IEL's estate. The complaint requested a declaratory judgment on IELHC's claim:

43

> Plaintiff contends <u>inter alia</u> that it has legal and equitable right, title, and <u>interest in the monies and assets remaining in the estate</u> of and in IEL's stock, and shares, certificates, <u>and value of such stock</u>.
>
> . . . .
>
> . . . <u>Plaintiff requests this Court to make and enter a binding judicial declaration in accordance with Plaintiff's contentions</u>.

The complaint also requested an injunction enjoining all of the defendants, including the Liquidator from, in part, "paying, transferring, assigning, encumbering, or otherwise disposing any and all assets, accounts, and monies of IEL; and . . . from creating or permitting anyone to create any further debt, liability, or other obligation from IEL to any person." These statements demonstrate that IELHC continued to assert a claim on all assets remaining in IEL's estate, sought to deprive the Liquidator of his power to adjudicate this or any claims against IEL's estate, and sought instead to vest the California Courts with the power to adjudicate IELHC's claim.

To allow a court other than the liquidation court sole jurisdiction to adjudicate a claim against the estate of an insolvent insurer is contrary to the purpose of ISRLA. ISRLA seeks to enhance the efficiency and equitability of insurance liquidation by providing the insurance commissioner of Hawaiʻi and the Circuit Court for the First Circuit with jurisdiction over delinquency and liquidation proceedings within the state. <u>See</u> HRS §§ 431:15-101 and 431:15-104 (2005). Once a liquidator

44

has been appointed, "ISRLA provides for an automatic stay of all proceedings against the insolvent insurance company and the liquidator." Four Star Ins. Agency, Inc., 89 Hawaiʻi at 432, 974 P.2d at 1022; see also HRS § 431:15-313 (2005) ("[N]o action at law or equity shall be brought against the insurer or liquidator."). Furthermore "[n]o judgment or order against an insured or the insurer entered after the date of filing of a successful petition for liquidation, and no judgment or order against an insured or the insurer entered at any time by default or by collusion need be considered as evidence of liability or of quantum of damages." HRS § 431:15-326(d). "Based upon the statutory scheme and the underlying purposes of ISRLA, the legislature intended to grant the Commissioner the broad powers to facilitate an orderly liquidation of an insolvent insurance company and to ensure an equitable apportionment between creditors of any losses that may result." Four Star Ins. Agency, Inc., 89 Hawaiʻi at 433, 974 P.2d at 1023.

Under a discretionary interpretation of the proof of claim statute, IELHC's First Amended Complaint in its California Lawsuit is similar to a proof of claim because it asserts a claim to all of the remaining assets in IEL's estate by right of IELHC's position as the sole shareholder of IEL. Furthermore, to promote ISRLA's goals of uniformity and equitability, the Liquidator should have the authority to recognize this lawsuit as

45

a claim against IEL's estate and adjudicate it as such pursuant to the provisions of HRS § 431, article 15. However, it is unnecessary to determine whether the California Lawsuit was the substantial equivalent of a proof of claim, such that it would trigger the Liquidator's adjudication, because the first letter alone sufficiently satisfied the HRS § 431:15-326 proof of claim requirements.

Due to the discretionary nature of Hawaiʻi's proof of claim statute, the liquidation court did not abuse its discretion in concluding that, taken together, IELHC's two letters and its California Lawsuit constituted a claim against IEL's estate.

## C. Subject Matter Jurisdiction

We have defined subject matter jurisdiction as "'jurisdiction over the nature of the case and the type of relief sought'" and "'the extent to which a court can rule on the conduct of persons or the state of things.'" County of Hawaiʻi v. C & J Coupe Family Ltd. P'ship, 119 Hawaiʻi 352, 368, 198 P.3d 615, 631 (2008) (alterations omitted) (quoting Black's Law Dictionary 870 (8th ed. 2004)). Whether the liquidation court has subject matter jurisdiction over IELHC's claim is a question of law reviewable de novo.

IELHC argues that the Liquidator and the liquidation court have no subject matter jurisdiction over the purported claim because IELHC never submitted a claim pursuant to HRS §

46

431:15-326.  IELHC maintains that the Liquidator created the claim and is now attempting to assert jurisdiction over this manufactured claim.  IELHC also alleges that the "claim" that the Liquidator is purporting to adjudicate is the entire California Lawsuit.  It argues that "[a]lthough [the Liquidator] swept the entire California Lawsuit within his broad definition of 'IELHC Claim,' the California Lawsuit is not a 'delinquency proceeding,' was not commenced by [the Liquidator], and is not brought against an insolvent insurer."  IELHC concludes that because ISRLA does not grant the Liquidator or the liquidation court jurisdiction over a claim that IELHC never asserted or over all of the causes of action in IELHC's California Lawsuit, the Liquidator lacked subject matter jurisdiction in this proceeding.

IELHC's argument that the liquidation court lacks jurisdiction fails because, as established above, IELHC did assert a claim against IEL's estate pursuant to ISRLA, and neither the Liquidator nor the liquidation court have purported to adjudicate the other claims raised in the California Lawsuit.

IELHC is correct that the Liquidator and the liquidation court's subject matter jurisdiction is limited by the terms of ISRLA.  ISRLA gives the liquidation court jurisdiction over claims asserted against an insolvent insurer's estate.  ISRLA states that "[t]he liquidator shall review all claims duly

47

filed in the liquidation." HRS § 431:15-333(a).[34] When the liquidator denies a claim, written notice is provided to the claimant and the claimant has sixty days to file any objection with the liquidator. HRS § 431:15-329(a).[35] When the liquidator does not alter the denial following the filing of objections, "the liquidator shall ask the court for a hearing as soon as practicable." HRS § 431:15-329(b). ISRLA's statute regarding jurisdiction and venue states that all actions authorized under

---

[34] HRS § 431:15-333 provides, in part:

> Liquidator's recommendations to the court. (a) The liquidator shall review all claims duly filed in the liquidation and shall make such further investigation as the liquidator shall deem necessary. The liquidator may compound, compromise, or in any other manner negotiate the amount for which claims will be recommended to the court, except where the liquidator is required by law to accept claims as settled by any person or organization, including any guaranty fund or association, or foreign guaranty fund or association. . . .
> (b) The court may approve, disapprove or modify the report on claims by the liquidator. . . .

[35] HRS § 431:15-329 provides:

> Disputed Claims. (a) When a claim is denied in whole or in part by the liquidator, written notice of the determination shall be given to the claimant or the claimant's attorney by first class mail at the address shown in the proof of claim. Within sixty days from the mailing of the notice, the claimant may file any objections with the liquidator. If no such filing is made, the claimant may not further object to the determination.
> (b) Whenever objections are filed with the liquidator and the liquidator does not alter the denial of the claim as a result of the objections, the liquidator shall ask the court for a hearing as soon as practicable and give notice of the hearing by first class mail to the claimant or the claimant's attorney and to any other persons directly affected, not less than ten nor more than thirty days before the date of the hearing. The matter may be heard by the court or by a court appointed referee who shall submit findings of fact along with such referee's recommendations.

HRS § 431, article 15 "shall be brought in the circuit court of the first circuit" -- the liquidation court.  HRS § 431:15-104(g).

Here, the Liquidator reviewed IELHC's claim asserted in the first letter and in the First Amended Complaint in the California Lawsuit.[36]  The Liquidator denied IELHC's claim, and IELHC filed objections.  After determining not to alter the denial of the claim following IELHC's objections, the Liquidator properly filed a Motion for an Order Confirming the Liquidator's Determination of a Disputed Claim.  Pursuant to HRS § 431:15-104(g) and HRS § 431:15-329(b), the circuit court of the first circuit had subject matter jurisdiction over this motion.

D.   **Personal Jurisdiction**

The liquidation court's ability to exercise personal jurisdiction over claimants is limited by the federal due process requirements of the fourteenth amendment.  In Interest of Doe, 83 Hawaiʻi 367, 373, 926 P.2d 1290, 1296 (1996).  We have previously cited United States Supreme Court precedent regarding personal jurisdiction stating that:

> "'[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,

---

[36]   It is irrelevant that the California Lawsuit also asserted various other causes of action against various other parties, including the Liquidator himself.  These other causes of action do not insulate IELHC's claim against IEL's estate from the Liquidator and the liquidation court's jurisdiction.  Conversely, the liquidator and the liquidation court do not have, nor have they ever sought, jurisdiction over these other causes of action.

> thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) . . . . The determining inquiry is whether "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. at 474, 105 S.Ct. at 2183 . . . .

Id. (some internal citations omitted) (quoting Shaw v. North Am. Title Co., 76 Hawaiʻi 323, 329–30, 876 P.2d 1291, 1297–98 (1994)). Whether the liquidation court properly exercised personal jurisdiction over IELHC is a question of law reviewable de novo. Id. at 326, 876 P.2d at 1294.

IELHC argues that the circuit court lacked the requisite personal jurisdiction to adjudicate its claim against IEL's estate. It reasons that, because this court held in Metcalf v. IEL that IELHC had no standing to oppose the liquidation of IEL, the liquidation court cannot now assert personal jurisdiction over IELHC. IELHC then argues that when the Liquidator filed the motion to initiate the proceedings in the liquidation court, this commenced a new action, requiring the Liquidator to issue a summons and provide proper service upon IELHC. Finally, IELHC states that the Liquidator's motion sought not only to adjudicate a claim, but also to enforce a settlement agreement and a stock subscription agreement. Therefore, IELHC argues, because the Liquidator did not bring an independent action to enforce the agreements, the liquidation court has no personal jurisdiction.

The Liquidator argues that the circuit court properly

50

exercised personal jurisdiction over IELHC.  He argues first that IELHC submitted to the liquidation court's jurisdiction when it was granted leave to intervene as a party-Respondent by the Stipulation to Allow Intervention of Investors Equity Life Holding Company and Order, filed in 1994.  He emphasizes that, while this court held that IELHC lacked standing to oppose IEL's liquidation, "[t]he Court did not hold that IELHC was not a party."  The Liquidator also argues that under ISRLA, the resolution of a claim against an estate does not require the commencement of a proceeding separate from the liquidation proceeding, and any discussion of IELHC's 1996 settlement agreement was raised defensively in response to IELHC's "affirmative" claim against IEL's estate.  Finally, the liquidator notes that by filing a claim in the liquidation proceeding, IELHC has submitted to the jurisdiction of the liquidation court.

Where a party files a claim with the Liquidator of an insolvent insurer's estate, the party has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" such that "he should reasonably anticipate being haled into court there."  In Interest of Doe, 83 Hawaiʻi at 373, 926 P.2d at 1296 (quoting Shaw, 76 Hawaiʻi at 329-30, 876 P.2d at 1297-98).  The New York Supreme Court, Appellate Division, has stated that "it is well established that in filing a proof of

51

claim in liquidation, a claimant submits itself to the jurisdiction of the liquidation court." Corcoran v. Hall & Co., Inc., 545 N.Y.S. 2d 278, 282 (1989).

When IELHC filed a proof of claim with the Liquidator, it submitted itself to the liquidation court's jurisdiction. That this court previously held that IELHC lacked standing to intervene in the liquidation of IEL, in no way demonstrates that the liquidation court lacked jurisdiction over IELHC. Rather, IELHC's previous participation as a party in IEL's liquidation is further evidence of IELHC's submission to the liquidation court's jurisdiction.

The Liquidator correctly concludes that the Motion for an Order Confirming the Liquidator's Determination of a Disputed Claim did not initiate a new suit, but was instead a continuation of the liquidation proceeding. ISRLA provides procedures for the judicial review of disputed claims:

> [T]he liquidator shall ask the court for a hearing as soon as practicable and give notice of the hearing by first class mail to the claimant or the claimant's attorney and to any other persons directly affected, not less than ten nor more than thirty days before the date of the hearing. The matter may be heard by the court or by a court appointed referee who shall submit findings of fact along with such referee's recommendations.

HRS § 431:15-329(b). These provisions do not require the liquidator to initiate a separate action in circuit court pursuant to the Hawaiʻi Rules of Civil Procedure. ISRLA provides for the liquidation court's review of the disputed claim, as it

52

provides for the court's review of all claims submitted to the liquidator. See HRS § 431:15-333(b) ("The court may approve, disapprove or modify the report on claims by the liquidator."). Here, the Liquidator's motion, submitted in response to IELHC's claim, was properly filed with the liquidation court as part of IEL's liquidation proceedings and it did not initiate any new actions.

**E.    Abatement**

Abatement is "'the suspension or defeat of a pending action for a reason unrelated to the merits of the claim.'"  C & J Coupe Family Ltd. P'ship, 119 Hawaiʻi at 368, 198 P.3d at 631 (alterations omitted).  We have held that "'where the party is the same in a [prior] pending suit, and the cause is the same and the relief is the same, a good plea in abatement lies.'"  Id. at 371, 198 P.3d at 634 (quoting Shelton Eng'g Contractors, Ltd. v. Hawaiian Pac. Indus., Inc., 51 Haw. 242, 249, 456 P.2d 222, 226 (1969)); see also Yee Hop v. Nakuina, 25 Haw. 205, 208-09 (1919) ("[I]f a suit is commenced while a prior suit is pending for the same cause between the same parties the pendency of the prior suit is a good plea in abatement . . . .").

IELHC argues that this case should have been abated pending the outcome of the California Lawsuit.  It reiterates its earlier argument that the Liquidator's "unilateral, self-generated Determination in 2009" initiated the current case, and

that this case is not a continuation of the liquidation proceedings begun in 1994 against IEL. IELHC concludes that, although it does not agree that the California Lawsuit and this case are between the same parties, because the Liquidator has characterized the California Lawsuit as the claim, this case may not proceed until the California Lawsuit is resolved.

The Liquidator responds that IELHC's argument fails primarily because the liquidation court correctly concluded that it has exclusive jurisdiction over claims against IEL's estate. The Liquidator also argues that, because the relief sought in the California Lawsuit differs from the relief sought here, abatement is inapplicable. The relief sought in the California Lawsuit is "a declaration that it is entitled to delivery of IEL's stock and the residual assets of its estate, and an injunction as to any activity related to assets of the estate." Whereas, the relief sought here is a "confirmation of the Liquidator's determination that IELHC was not entitled to the IEL's stock or assets." Furthermore, the Liquidator argues, both the liquidation action and IELHC's claim, in the form of its first letter, commenced before the California Lawsuit.

This issue is most easily resolved by noting that, as discussed above, the liquidation court's review of disputed claims is conducted as part of the liquidation court's continuing and exclusive jurisdiction over the liquidation of an insolvent

54

insurer.  See HRS § 431:15-104(c) ("No court of this State has jurisdiction to entertain, hear or determine any complaint praying for the dissolution, liquidation, rehabilitation, sequestration, conservation, or receivership of any insurer, or praying for an injunction or restraining order or other relief preliminary to, incidental to, or relating to that type of proceedings other than in accordance with this article."); HRS § 431:15-105(a) (2005) ("Any receiver appointed in a proceeding under this article may, at any time apply for and the circuit court of the first circuit may grant, under the relevant provisions of the Hawaii Rules of Civil Procedure, any injunctions, any restraining orders, and other orders as may be deemed necessary and proper . . . .").  The liquidation court's jurisdiction over the liquidation of IEL's estate began in 1994, proceeding the commencement of the California Lawsuit by fifteen years.  Therefore, this action cannot be abated by the subsequent California Lawsuit.  Furthermore, that the California Lawsuit reiterates an earlier claim against IEL's estate does not abate the liquidation court's review of the claim where the California Lawsuit involved different parties, different causes of action, and sought different relief.

## F.    Due Process

The fourteenth amendment of the United States Constitution and article I, section 5 of the Hawaiʻi Constitution

55

provide that no person shall be deprived of "life, liberty, or property without due process of law." State v. Bani, 97 Hawaiʻi 285, 293, 36 P.3d 1255, 1263 (2001). The due process clause seeks to protect individuals from arbitrary governmental deprivation of property and liberty rights. Id. Procedural due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of property interest." In re ʻĪao Ground Water Mgmt. Area High-Level Source Water Use Permit Applications, 128 Hawaiʻi 228, 267, 287 P.3d 129, 168 (2012) (quoting Troyer v. Adams, 102 Hawaiʻi 399, 437, 77 P.3d 83, 121 (2003)). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Koʻolau Agric. Co., Ltd. v. Comm'n on Water Res. Mgmt., 83 Hawaiʻi 484, 496, 927 P.2d 1367, 1379 (2012) (quoting Sandy Beach Def. Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989)).

IELHC advances a variety of vague arguments in support of its contention that its due process rights have been violated. It contends that in classifying the California Lawsuit as a claim against IEL's estate, the Liquidator and the liquidation court have effectively adjudicated all of the causes of action raised in that suit. IELHC argues that because this alleged claim encompasses a common law cause of action for damages, it has a

56

right to a jury trial that has been violated. IELHC also argues that it is a violation of due process for the Liquidator, a defendant accused of fraud in the California Lawsuit, to adjudicate IELHC's claim. IELHC accuses the Liquidator of serving "in both an adjudicative and advocative function," impermissibly "commingl[ing] prosecutorial and adjudicatory functions." IELHC's final argument is that the Liquidator and the liquidation court employed summary procedures, despite the fact that there existed a genuine issue of material fact.

The Liquidator begins by refuting IELHC's assertion that "the Liquidator 'swept the entire California Lawsuit within his broad definition of [the] IELHC Claim.'" He quotes language from the Notice of Determination establishing that the Liquidator's determination only addressed the issue of IELHC's purported ownership of shares in IEL and its resultant claim to distributions from IEL's estate. The Liquidator then cites precedent from other jurisdictions establishing that there is no right to a jury trial in insurance liquidation proceedings because these are equitable proceedings, analogous to the proceedings of a bankruptcy court. The Liquidator next contends that IELHC's arguments regarding the summary nature of the proceedings are without merit. The Liquidator notes that IELHC had the opportunity to present evidence to the liquidation court and that IELHC never requested an evidentiary hearing.

Furthermore, the Liquidator stresses that the summary judgment motion standard, which precludes summary judgment where "'there is a genuine issue <u>for trial</u>,'" is inapplicable here "because the ISRLA <u>does not provide for a trial</u>." Finally, the Liquidator argues that although IELHC objects to the process in which its claim was adjudicated pursuant to ISRLA, IELHC never specifically challenges the constitutionality of ISRLA's claims adjudication procedures.

As established above, IELHC's first claim asserted a claim to all remaining assets in IEL's estate based on its position as the sole shareholder of IEL. This letter initiated the claims adjudication process administered by the Liquidator and the liquidation court. Although the Liquidator referred to the additional information provided by the California Lawsuit, the Liquidator never purported to adjudicate claims aside from those asserted in the first letter. In the Notice of Determination, the Liquidator stated that "IELHC filed its initial claim with the Liquidator on April 23, 2008," and "IELHC filed additional information with respect to the IELHC Claim in the form of the California Lawsuit."

Because the remaining claims in IELHC's California Lawsuit were not adjudicated by the Liquidator or the liquidation court, IELHC may not assert any due process violations with respect to these claims. The Liquidator has never attempted to

adjudicate the fraud claims IELHC asserted against him in the California Lawsuit, and therefore there is no impermissible commingling of roles. Whether IELHC is entitled to a jury trial on the claims from the California Lawsuit is not an issue properly before this court.

In adjudicating IELHC's claim against IEL's estate, the Liquidator followed the claims adjudication process established in ISRLA. See HRS § 431:15-329. IELHC was given, and took advantage of, numerous opportunities to respond to the Liquidator's determination in the form of letters to the Liquidator and briefs to the liquidation court. The liquidation court then held a hearing on August 23, 2010, during which IELHC argued the merits of its case. IELHC requested no further hearings.

IELHC has not alleged that the Liquidator or the liquidation court did not follow ISRLA's procedures or specifically challenged the constitutionality of ISRLA. Rather, IELHC objects to the "summary" nature of the proceedings. Where an appellant makes general assertions of a due process violation, without further elaboration or citation to authority, the court cannot reach a reasoned conclusion, and the due process argument is deemed waived. C & J Coupe Family Ltd. P'ship, 119 Hawaiʻi at 373, 198 P.3d at 636. Because the liquidation court followed ISRLA, and IELHC does not specify how the ISRLA proceedings do

not meet constitutional due process requirements, IELHC's due process claim fails.

## G.   Time Bar/Estoppel

The doctrine of judicial estoppel serves to bar a party from taking a position in a subsequent lawsuit that is inconsistent with a position it took in a previous lawsuit.  We have previously stated that "'a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.'"  Lee v. Puamana Cmty. Ass'n, 109 Hawaiʻi 561, 576, 128 P.3d 874, 889 (2006) (alterations omitted) (quoting Roxas v. Marcos, 89 Hawaiʻi 91, 124, 969 P.2d 1209, 1242 (1998)).

IELHC argues that the Liquidator is estopped from arguing that IELHC's claim is time barred because during the California Lawsuit the Liquidator asserted that the Hawaiʻi statute of limitations had not expired.  IELHC did not raise this argument to the circuit court, but it now asserts that it may invoke the doctrine for the first time before the appellate court.

Although the Liquidator agreed to toll the statute of limitations from the date the California Lawsuit was filed, he

did not stipulate to waiving any applicable time bars.  In its opinion, the California Court of Appeal's specified that the issue of the timeliness of IELHC's claim would remain an issue were the claim litigated in the Hawaiʻi courts.  IELHC v. Schmidt, 126 Cal. Rptr. 3d at 144.  The court stated:

> Defendants have agreed to toll the statute of limitations from February 25, 2009, the date plaintiff filed its California action, to the date plaintiff files suit in Hawaiʻi.  Their second stipulation makes clear that, if this action is refiled in Hawaii, one issue will be the timeliness of any claims time barred in that state as of February 25, 2009.

Id.  Because the Liquidator did not agree to waive the time bar, he was not estopped from recommending that the liquidation court hold IELHC's claim to be untimely.

The underlying policy for establishing a claim bar date, as with a statute of limitations, is "the prompt assertion of claims."  Blair v. Ing, 95 Hawaiʻi 247, 266, 21 P.3d 452, 471 (2001).  ISRLA allows a late filing claimant to share in distributions, "to the extent that such payment will not prejudice the orderly administration of the liquidation," if "[t]he existence of the claim was not known to the claimant and . . . the claimant filed such claim as promptly as reasonably possible after learning of it."  HRS § 431:15-325(b).  The Liquidator may consider other late claims not meeting this criteria, and may "permit it to receive distributions which are subsequently declared on any claims of the same or lower priority if the payment does not prejudice the orderly administration of

61

the liquidation." HRS § 431:15-325(d). The language of HRS § 431:15-325 establishes that this exception to the claim bar date is purely discretionary.

IELHC's claim against IEL's estate was first asserted on April 23, 2008, more than twelve years after the claim bar date of December 1, 1995. IELHC's claim is based upon its assertion that the Liquidator did not validly forfeit IELHC's shares after they were surrendered in 1996 and that IELHC therefore remains the sole shareholder of IEL. IELHC's attorneys were present at the circuit court hearing approving IELHC's settlement agreement and the stock subscription agreement. Therefore, if these agreements were in someway defective, and if IELHC had remained the sole shareholder of IEL as it now attests, IELHC should have been aware of its status and its resultant shareholder claim against IEL's estate in 1996. Instead, IELHC waited another eleven years before asserting its claim.[37] The liquidation court did not abuse its discretion in concluding that IELHC's claim was time barred because IELHC waited more than eleven years before notifying the Liquidator of its claim against IEL's estate.

---

[37] IELHC maintains that its claim accrued in 2008, after the filing of the Liquidator's February 27, 2008 report on the status of IEL's estate. IELHC states that this report showed a surplus in IEL's estate, assuming that IEL's debts to HLDIGA are invalid. However, IELHC does not establish how this report differs from any of the earlier reports showing large debts owing to HLDIGA. Furthermore, even if IELHC's assertions regarding HLDIGA were correct, there is no authority establishing that a claim accrues only when the debtor becomes solvent.

## H. Shareholder Status

Although the liquidation court noted that IELHC's claims were untimely, it ultimately decided the case on the merits of IELHC's argument. The court concluded that IELHC was not a shareholder of IEL, and thus it had no ground for asserting claims against IEL's estate. It stated:

> IELHC is not the legal or equitable shareholder of IEL.
>
> . . . IELHC voluntarily relinquished its shares as part of the Settlement Agreement approved by this Court. The record affirmatively demonstrates that IELHC has no current interest in IEL's estate and is not entitled to a distribution from the IEL estate as a shareholder of IEL. IELHC does not have any current legal or equitable interest in IEL's stock and IELHC was not wrongfully deprived of its shares.

In the section of its brief entitled "Statement of the Points on Appeal," IELHC states that these conclusions of law are in error because "they incorrectly decided the ownership and disposition of Appellant's shares of stock of IEL." However, in the argument section of its brief, IELHC presents no arguments to refute the liquidation court's conclusion that IELHC is no longer a shareholder of IEL.[38] Under the Hawaiʻi Rules of Appellate Procedure, if an appellant does not argue a point of error, the

---

[38] In the section of IELHC's opening brief concerning due process violations, IELHC includes a list of material facts in dispute as evidence of why summary adjudication procedures were inappropriate. IELHC lists the ownership of IEL's stock as one of these facts in dispute. IELHC states that its claim to IEL's stock is based upon its interpretation of HRS § 431:5-101, which it claims the Liquidator did not comply with in cancelling IELHC's shares and issuing new shares to be held in trust for HLDIGA. See also supra note 21 (quoting HRS § 431:5-101). This short discussion of the ownership of IEL's stock is not an argument in support of IELHC's ownership of the shares, but rather a summary of a fact in dispute.

court may consider it waived. HRAP Rule 28(b)(7) (2010) ("Points not argued may be deemed waived."). Because IELHC does not argue that the liquidation court erred in concluding that it was not a shareholder of IEL, we may consider this issue waived. Furthermore, because IELHC's claim was untimely, there was not a need for the liquidation court to reach the question of IELHC's shareholder status. We may therefore affirm the liquidation court's order denying IELHC's claim, without reviewing the liquidation court's determination that IELHC no longer holds shares in IEL. See Del Monte Fresh Produce (Haw.), Inc. v. Int'l Longshore & Warehouse Union, Local 142, 128 Hawaiʻi 289, 304, 287 P.3d 190, 205 (2012) ("[T]his court can affirm the decision of a lower tribunal on any ground appearing in the record.").

## V. CONCLUSION

For the reasons stated above, we affirm the circuit court's order granting the Liquidator's motion for an order confirming the Liquidator's determination of a disputed claim.

| | |
|---|---|
| James J. Bickerton and Nadine Y. Ando for appellant | /s/ Paula A. Nakayama |
| | /s/ Edwin C. Nacino |
| William C. McCorriston and John Y. Yamano for appellee Gordon Ito, Insurance Commissioner of the State of Hawaiʻi | /s/ Rom A. Trader |
| | /s/ Randal K.O. Lee |



64

David J. Reber,
and Lindalee K. Farm and
Franklin D. O'Loughlin,
<u>pro have vice</u> and
Cindy C. Oliver,
<u>pro hac vice</u>, for appellee
Hawaii Life and Disability
Insurance Guaranty Association